UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X   Index No.: 24-cv-8792-GHW

DAVID MILLER as TRUSTEE OF THE
MILLER PROTECTIVE TRUST UA
02/13/2019, and DAVID MILLER FBO
HARLLON HOLDINGS LLC, and
DAVID MILLER FBO VISION CAPITAL NY,
Inc., and DILLON MILLER FBO the DJM
GROUP INC., and ARLENE LEIBSOHN,

                     Plaintiffs,      **AMENDED COMPLAINT**

   -against-

PRESSURE BIOSCIENCES, INC., ~~and~~
RICHARD SCHUMACHER,
GARDEN STATE INVESTMENT
ADVISORY SERVICES LLC, and
GARDEN STATE SECURITIES, INC.,

                  Defendants.
--------------------------------------------------------X

     Plaintiffs David Miller ("Miller") as trustee fbo the Miller Protective Trust UA
2/13/2019 (the "Miller Trust"), David Miller as agent fbo Harllon Holdings LLC
("Harllon"), David Miller as agent fbo Vision Capital NY, Inc. ("Vision"), Dillon Miller
as agent fbo DJM Group Inc. ("DJM"), and Mrs. Arlene Leibsohn ("Leibsohn")
(collectively "Plaintiffs") do hereby allege against defendants Pressure Biosciences, Inc.
("PBI" or the "Borrower"), ~~and~~ Richard Schumacher ("Schumacher") Garden State
Investment Advisory Services LLC and Garden State Securities Inc. (collectively the
"Garden State Entities") (aggregately, the "Defendants"), as follows:

**SUMMARY**

1.  Plaintiffs bring this action to remedy defaults of several promissory notes, which were procured and maintained by an ongoing fraud perpetrated by Defendants, in connection with the purported financing in and of PBI.

2.  Defendants procured Plaintiffs' funds by fraud.

3.  The Defendants schemed to obtain funding, and additional funding, by making false representations and assurances regarding Defendant firm PBI, financing thereof and its ability to cover promissory notes, ~~and~~ failed to disclose the firm's accurate financial situation, and failed to disclose that Defendant Schumacher was misappropriating and misdirecting company funds for his own personal use.

4.  All note documentation was prepared and delivered by Defendant Schumacher, who discussed same with the Plaintiffs.

5.  Based upon numerous and collective representations and assurances from the Defendants, the Plaintiffs agreed to provide funding to Defendant PBI and Schumacher.

6.  Based upon numerous representations and assurances from the Defendants, about the firm's finances and funding, the Plaintiffs agreed to numerous extensions on those notes, which extensions provided additional terms and conditions, including additional principal and interest.

7. PBI and Schumacher have breached and defaulted on all executed notes, by their repeated failure to pay back principal and interest as reflected on those notes, even after repeated requests and assurances that they would so make payments.

8. Defendants have failed to make payments on the notes, and thus breached and defaulted on each.

9. Defendants engaged in a collective pattern of such joint representations and assurances to other investors and funders, to obtain original funding and additional funding.

10. Defendants engaged in a collective pattern of such representations and assurances to other investors and funders, to obtain loan extensions.

11. Defendants engaged in a collective pattern of such representations and assurances to other investors and funders, to obtain additional funding, to provide funds to other investors and funders, effectively engaging in a Ponzi scheme.

12. Defendant Garden State Entities, through their agents, made representations and assurances to the Plaintiffs regarding the financial stability of PBI, and additional finances and funding, to continue to be able to obtain other investors to provide funds.

11.

13. During all relevant periods of time, Defendant Schumacher paid himself a salary not indicative of a start-up struggling company not capable of paying its obligations, siphoning money off to himself and those around him, including, by way of example, just to himself: $309,161 in 2023, $309,185 in 2022, $308,962 in

**Formatted:** Font: Times New Roman

**Formatted:** Font: Times New Roman

**Formatted:** Font: Times New Roman

both 2021 and 2020, and approved similarly large compensation for other officers and principals of the firm.

14. Defendant Garden State Entities received commissions and fees on assisting Defendants PBI and Schumacher in their financing.

15. Defendant Garden State Entities knew, or should have known, as investment professionals, that PBI was not generating sufficient revenue, and was in default of numerous promissory notes, yet continued to solicit funding for PBI, convincing Plaintiffs to continue to fund additional notes.

12.

13.16.    Defendant Schumacher is an officer of PBI; its President and CEO.

14.17.    Defendant Schumacher has a responsibility to have his corporation PBI report the default on any of the notes that are subject to this suit, and others.

15.18.    Upon information and belief, Defendant Schumacher failed to report the default on any of the notes of other investors, thereby providing a fraud on the Plaintiffs.

16.19.    Upon information and belief, Defendant Schumacher failed to report this litigation, thereby providing and continuing the fraud.

17.20.    Defendant Schumacher represented that PBI's corporate securities filings were accurate, when he was aware that said filings did NOT report the litigation or defaults.

18.21.    Defendants violated numerous federal securities laws, including Rule 10B-5 of the Exchange Act.

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

Formatted: Indent: Left: 0.5", No bullets or

19.22.    Due to their repeated and converted pattern of false assurances regarding

the firm PBI and ability to repay the notes, and additional funding and investing,

the Defendants engaged in a conduct of an enterprise through a pattern of

racketeering activity.

**Procedural History**

20.23.    This matter was initiated via the filing of a Summons and <u>Notice</u> in the

Supreme Court of the State of New York, County of New York, Index No.

654729/ 2024 (ECF No. 4.1), which was served on Defendant on October 21,

2024 (ECF No. 4.2), originally titled *David Miller, Individually, and as Trustee*

*for the Miller Family Protective Trust UA 02/13/2019, versus Pressure*

*Biosciences, Inc.*

21.24.    The underlying issue between the parties in that matter was a series of two

promissory notes issued by Defendant.  Specifically, there are two notes in

question for the Miller Trust, each for $500,000, on which Defendant prepared and

requested extensions.  With extensions and forbearance agreements prepared by

Schumacher fbo PBI, the amount of principal on those two notes is now

$1,250,000, with interest and costs.  The Defendants defaulted on those notes.

22.25.    Based on those notes' jurisdictional verbiage, on November 20, 2024

Defendant PBI filed a Notice of Removal to this Court (ECF No. 4), with Plaintiff

David Miller a resident of and the Miller Protective Trust organized in the State of

New York and Defendant organized in the Commonwealth of Massachusetts, and

the amount in controversy exceeding $75,000.

23.26.    Pursuant to the notes in question, New York law applies.

27. During the January 2, 2025 meet and confer, Defendant PBI consented to the

filing of a complaint adding the referenced plaintiffs.

28. The original complaint was filed on March 28, 2025 (ECF 21), and served on March 31, 2025 (ECF 24).  A Civil Case Management Plan and Scheduling Order was entered on April 18, 2025 (ECF 30).

24.29.    Pursuant to Fed. R. Civ. P 15(a)(1), Plaintiffs amend their original complaint to remove the prior RICO claim, add the Garden State Entities, and allegations thereon.

**Jurisdiction and Venue**

25.30.    This Court has jurisdiction pursuant to Section 10(b) and 10(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b) & 17 C.F.R. §240.10b-5] Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mail in connection with the transactions, acts, practices and course of business alleged herein.

26.31.    This Court further has diversity jurisdiction in that none of the Plaintiffs reside in Massachusetts or New Jersey, , Defendants' s' state of residence or organization, and the amount in controversy, in excess of $2,000,000, far exceeds the jurisdictional requirements.

27.32.    Venue lies in this district based on the underlying promissory notes' jurisdictional language; the matter was removed to this District based on diversity and the matter exceeding $75,000.

28. Communications between the Plaintiffs and Defendants were primarily telephonic, as well as email and texting.

**The Parties**

~~29.~~34.     Plaintiff David Miller is a resident of the State of New York.

~~30.~~35.     Plaintiff Miller Trust was organized in the State of New York.

~~31.~~36.     Plaintiff Harllon Holdings LLC is a limited liability corporation organized in the State of Delaware.

~~32.~~37.     Plaintiff Vision Capital NY Inc. is a corporation organized in the State of New York.

~~33.~~38.     Plaintiff DJM Group Inc. is a corporation organized in the State of New York; Dillon Miller as agent of DJM Group Inc. is a resident of the State of New York.

~~34.~~39.     Plaintiff Mrs. Arlene Leibsohn is a resident of the State of Florida.

~~35.~~40.     Defendants Pressure Biosciences, Inc. is a corporation organized in the Commonwealth of Massachusetts, is presently publicly listed on the Expert Market, a tier of the Over-the-Counter (OTC) markets with the ticker symbol (PBIO) and maintains its principal place of business at 480 Neponset Street, Unit 10B, Canton, Massachusetts 02021.

41. Defendants Richard Schumacher is a resident of the Commonwealth of Massachusetts.  He is PBI's President, Chief Executive Officer and Director.

42. Defendant Garden State Investment Advisory Services LLC is a limited liability corporation organized in New Jersey, with an address of 328 Newman Springs Road, Red Bank, New Jersey 07701, and is an investment advisory firm registered with the US Securities and Exchange ("SEC") since at least April 2014.

Formatted: Font: Bold

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman, Not Bold

43. Garden State Securities Inc. is a corporation organized in New Jersey, also with an address of 328 Newman Springs Road, Red Bank, New Jersey 07701, and is a financial brokerage firm registered with the SEC since at least March 1981 and in all 50 states, with at least 24 reportable events including matters parallel to those raised here.

44. According to the website of Garden State Securities Inc., the firm's engages in financial advisory services through its Corporate Finance and Investment Banking Department, GSS Capital Group, which includes "structuring, negotiating, advising and assisting in placing capital for investment banking/corporate finance clients".

45. Upon information and belief, it was Garden State Securities Inc.'s GSS Capital Group that was engaged with PBI.

36.

**Notes in Question**

~~37.~~46.     David Miller invested with Defendants Schumacher and PBI for a period of

time, with the firm paying back owed principal and interest, until the current

obligations and breaches.

~~38.~~47.     On September 12, 2023, Defendant Schumacher provided David Miller an

analysis summarizing the then approximate holdings of "David Miller and Related

Parties", all in default and more fully discussed below; attached as Exhibit "A".

~~39.~~48.     Based on the executed notes, Defendants PBI and Schumacher have

defaulted on the Plaintiffs' notes on $1,950,000 funds provided, plus interest and

fees and increased valuation on those notes, and interest and cost of litigation:

   a.  Harllon $650,000 notes, and

   b.  Miller Trust $700,000 noes, and

   c.  Vision $300,000 notes, and

   d.  DJM $100,000 note, and

   e.  Leibsohn $200,000 note.

~~40.~~49.     Based on the executed notes, Defendants PBI and Schumacher have

defaulted on the Plaintiffs' notes, reflected at valuations on the provided

spreadsheet and loan extension and forbearance documents, as of December 31,

2024, without penalties, costs and fees (marked as Exhibit "A"):

   a.  Harllon $250,000 note (one $400,000 Harllon note was fraudulently

      converted, based on Defendant Schumacher's assurances that the

conversion was solely to obtain funding from other investors who wanted

to see money into the firm prior to theirs); Fn1 and

b. Miller Trust note 1 $500,000 increased by extension $100,000 and interest

of $181,250 to total of $781,250; and

c. Miller Trust note 2 $500,000 increased by extension $100,000, plus interest

of $175,000 to a total of $775,000; and

d. Vision note 1 $300,000 decreased by $100,000 and then increased by

extension to $380,000, plus $190,000 interest, to a total of $570,000; and

e. Vision note 2 $100,000 increased by extension to $190,000, plus $85,000

interest, to a total of $275,000; and

f. DJM $100,000 note increased by extension to $230,000, plus $85,000

interest, to a total of $315,000; and

**g.** Leibsohn $200,000 note increased to $400,000 by extension, plus $160,000

interest, to a total of $560,000.

~~41.~~ The forbearance documents are an acknowledgment by the Defendants of their

default and breach on each note.

---

1.     The federal securities laws declare that all contracts made or to be performed in violation of the federal securities laws are voidable at the option of the party that did not violate those laws. See, e.g., Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 205 (3d Cir. 2006) (citing 15 U.S.C. § 78cc(b); Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387–88 (1970); Nat'l Union Fire Ins. Co. v. Turtur, 892 F.2d 199, 206 n.4 (2d Cir. 1989)); GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 199 (3d Cir. 2001) (citing 15 U.S.C. § 78cc(b)).

## HARLLON HOLDINGS LLC

42.51.    Based on the representations and assurances of Defendant Schumacher,

David Miller fbo Harllon Holdings LLC provided funds to Defendant Borrower

evidenced by two notes: $500,000 on January 4, 2021 ("Harllon Note 1") and

$250,000 on September 15, 2021 ("Harllon Note 2").

43.52.    Harllon Note 1, which was prepared and executed by Defendant

Schumacher fbo Defendant Borrower on January 4, 2021, was for a principal

amount of $500,000, with a maturity or due date of July 6, 2021, with interest and

fees due, in addition to the principal, copy of which is attached hereto as Exhibit

"B".

44.53.    Harllon Holdings provided payment to Defendant Borrower in accordance

with the Harllon Note 1.

45.54.    Defendants PBI and Schumacher were aware that Plaintiff David Miller

personally procured the provided funds by obtaining a mortgage on his residence.

46.55.    Defendants PBI and Schumacher repaid $100,000 on Harllon Note 1 on

August 10,  2021.

47.56.    On September 15, 2021, at the request of Defendant Schumacher, and

based upon Defendants' repeated representations and assurances, and the

repayment, David Miller executed a Promissory Note Extension fbo Harllon,

extending the original maturity date on the remaining $400,000 Harllon Note 1 to

September 30, 2021.

48.57.    Defendant Schumacher was assuring David Miller that he and PBI had

funds to pay back the borrowed $500,000, and based on the repayment of the

$100,000, the remaining $400,000, with interest.

58. Defendant Schumacher was assuring David Miller that he and PBI were in

negotiations for funding, from several companies interested in one aspect of PBI

or another, often bolstered by conversations with agents of the Garden State

Entities.

59. Purely by way of example, during the time Defendant Schumacher was soliciting

funds from Harllon, Defendant Garden State Entities' agents were assuring David

Miller that they were in negotiations with Flexible Solutions International, Inc.

("FSI") which would be acquiring technology from PBI and thus any outstanding

note would be paid off.

49.

60. Defendants' engaged in a plot and scheme to defraud David Miller, and others, in

order to solicit funds.

61. Defendants also represented that Clayton (Clay) Struve, investor/ lender in PBI,

was making additional investments and funds, which would go directly and

specifically to David Miller's outstanding notes.

62. Defendant Garden State Entities that they had assisted Struve in financing with

Know Labs, Inc. (KNE) which had generated considerable profit to Struve, who

would place funds into PBI, which funding would cover David Miller's

outstanding notes directly.

63. Defendant Garden State Entities, acting through its agent Terry Brodt, represented that they could obtain funds from Struve.

50.

51.64.    The representations were all a backdrop to a previous note coverage, where PBI had paid the principal on a $1,000,000 note to Harllon, which funds were borrowed by David Miller from a friend, Matt McCormack; Defendant Garden State Entities would regularly state that since he obtained financing to cover that note it would so do again to pay , and so as that had been paid back the Miller notes would as well.

52.65.    Defendants were aware of the specifics of that $1,000,000 note and repayment.

53.66.    Based on those representations, David Miller fbo Harllon agreed to discuss Harllon Note 2, which was prepared and executed by Defendant Schumacher fbo Defendant Borrower on September 15, 2021, for a principal amount of $250,000, with a maturity or due date of March 15, 2022, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "C".

54.67.    Harllon Holdings provided payment to Defendant Borrower in accordance with the Harllon Note 2.

55.68.    On April 24, 2024, at the requests of Defendant Borrower, and based upon Defendant Schumacher's repeated representations and assurances, Harllon Holdings executed note extension agreements, acknowledging maturity date extensions on Note 2 to March 15, 2022, then to September 15, 2023, and then to

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

March 15, 2024, and finally on April 24, 2024 through September 24, 2024, on an increased note value of $385,000, copy of which is attached hereto as Exhibit "D".

~~56.~~69.    That April 24, 2024 Note 2 extension expressed a $15,000 a month interest payment.

~~57.~~70.    While Harllon Holdings has repeatedly requested interest payments on Harllon Note 1 and 2, and their extensions, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on the Harllon Notes, including for Harllon Note 2 of $15,000 a month from April 24, 2024.

~~58.~~71.    While Harllon Holdings has repeatedly requested payment on Harllon Note 1 and Note 2,  Defendants PBI and Schumacher have failed to pay on the Harllon Notes.

~~59.~~72.    Defendants PBI and Schumacher have breached their agreements to pay the contracted principal and interest payments under Harllon Note 1 and Harllon Note 2.

~~60.~~The claims for these notes, for David Miller and Harllon, occurred with direct false assurances and representations from Defendant Schumacher~~,~~, prior to the false assurances and representations sales pitches from Defendant Garden State Entities.

**Formatted:** Font: Times New Roman

### MILLER PROTECTIVE TRUST UA 02/13/19

61.74.    Based on the Defendants' continued representations and assurances, David Miller, as Trustee of the Miller Protective Trust UA 02/13/2019 (the "Miller Trust"), provided funds to Defendant Borrower evidenced by two $500,000 notes, executed on March 13, 2023 ("Trust Note 1") and March 24, 2023 ("Trust Note 2").

62.75.    Trust Note 1, which was prepared and executed by Defendant Schumacher fbo Defendant Borrower on March 13, 2023, was for a principal amount of $500,000, with a maturity or due date of September 13, 2023, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "E".

63.76.    The Miller Trust provided the $350,000 payment to Defendant Borrower in accordance with Trust Note 1.

64.77.    Trust Note 2, which was executed by Defendant Schumacher fbo Defendant Borrower on March 24, 2023, was for a principal amount of $500,000, with a maturity or due date of September 25, 2023, with interest and fees due in addition to the principal, copy of which is attached hereto as Exhibit "F".

65.78.    The Miller Trust provided the $350,000 payment to Defendant Borrower in accordance with Trust Note 2.

66.79.    On September 18, 2023, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances the Miller Trust executed a Note Extension Agreement, extending the original maturity date stated

on Trust Note 1 of September 13, 2023 to March 18, 2024, copy of which is
attached hereto as Exhibit "G".

67.80.    Also on September 18, 2023, at the request of Defendant Schumacher, and
based upon Defendants' repeated representations and assurances, the Miller Trust
executed a Note Extension Agreement, extending the original maturity date stated
on Trust Note 2 of September 24, 2023 to March 24, 2024, copy of which is
attached hereto as Exhibit "H".

68.81.    On March 27, 2024, again at the request of Defendants Borrower, the
Miller Trust executed a new extension agreement, entitled the Miller Trust
Forbearance Agreement, on both notes, copy of which is attached hereto as
Exhibit "I", which stated and acknowledged the then balance on Trust Note 1 of
$550,000 and Trust Note 2 of $550,000, and extending each note, using a
laddering scheduling if payments on the two notes were not made, as follows:

    a.  As of April 1, 2024, extending the time on each $550,000 note payment to
the end of April 2024, with an additional $50,000 aggregate for the
extension; and

    b.  As of May 1, 2024, extending the time on each $550,000 note payment to
May 31, 2024, with an additional $50,000 aggregate for the additional
extension; and

    c.  As of June 1, 2024, extending the time on each $550,000 payment to June
30, 2024, with an additional $50,000 aggregate for the additional extension.

69.82.    The total owed to the Miller Trust, without additional interest and fees, as of June 30, 2024, was therefore $1,250,000, plus costs and fees:

  a.  $550,000 Note 1, and

  b.  $550,000 Note 2; and

  c.  $150,000 for the three extension of $50,000 each.

70.83.    While the Miller Trust has repeatedly requested interest payments on Trust Note 1 and Trust Note 2, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on Trust Note 1 and Trust Note 2.

71.84.    While Miller Trust has repeatedly requested payment on Trust Note 1 and Trust Note 2, Defendants PBI and Schumacher have failed to pay on the notes.

72.85.    Defendants PBI and Schumacher have breached their agreement to pay the contracted principal and interest payments under Trust Note 1 and Trust Note 2.

## VISION CAPITAL NY

73.86.    Based on the Defendants' continued representations and assurances, Vision Capital NY provided funds to Defendant Borrower evidenced by two notes: $300,000 executed on January 12, 2023 ("VC Note 1") and $100,000 on May 23, 2023 ("VC Note 2").

74.87.    VC Note 1, which was executed by Defendant Schumacher fbo Defendant Borrower on January 12, 2023, was for a principal amount of $300,000, with an original maturity or due date of September 24, 2023, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "J".

~~75.~~**88.**    Vision Capital provided the $300,000 payment to Defendant Borrower in accordance with VC Note 1.

~~76.~~**89.**    Defendants PBI and Schumacher repaid Vision Capital $100,000 on VC Note 1 on June 30, 2023.

~~77.~~**90.**    VC Note 2, which was executed by Defendant Schumacher fbo Defendant Borrower on May 23, 2023, was for a principal amount of $100,000, with a maturity or due date of September 23, 2023, with interest and fees due in addition to the principal, copy of which is attached hereto as Exhibit "K".

~~78.~~**91.**    Vision Capital provided the $100,000 payment to Defendant Borrower in accordance with VC Note 2.

~~79.~~**92.**    On April 24, 2024, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, Vision Capital executed a Note Extension Agreement, extending the original maturity date stated on VC Note 1 of September 12, 2023 to March 18, 2024, and then to September 24, 2024, which also stated that the then owed principal sum including accrued interest on VC Note 1 was $380,000, copy of which is attached hereto as Exhibit "L".

~~80.~~**93.**    On April 24, 2024, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, Vision Capital executed a Note Extension Agreement, extending the original maturity date stated on VC Note 2 of September 23, 2023, to March 23, 2023, and then to September

24, 2024, which noted that the then owed principal sum including accrued interest
on VC Note 2 was $190,000, copy of which is attached hereto as Exhibit "M".

81.94.    While Vision Capital has repeatedly requested payment on VC Note 1 and
VC Note 2, Defendants PBI and Schumacher have failed to pay on those notes.

82.95.    Defendants PBI and Schumacher have breached their agreement to pay the
contracted principal and interest payments under VC Note 1 and VC Note 2.

## DJM GROUP

83.96.    Based on the Defendants' continued representations and assurances, Dillon
Miller as agent of the DJM, provided funds to Defendant Borrower.

84.97.    The note which was executed by Defendant Schumacher fbo Defendant
Borrower on February 24, 2023 to the DJM Group, was for a principal amount of
$100,000, with a maturity or due date of August 24, 2023, with interest and fees
due, in addition to the principal (the "DJM Note", copy of which is attached hereto
as Exhibit "N").

85.98.    The DJM Group provided payment to Defendant Borrower in accordance
with the DJM Note.

86.99.    On September 18, 2023, at the request of Defendant Schumacher, and
based upon Defendants' repeated representations and assurances, the DJM Group
executed a Note Extension Agreement, extending the maturity date stated on the
DJM Note of August 24, 2023 to March 24, 2024, with continued interest at 10%
per month and other terms and fees, copy of which is attached hereto as Exhibit
"O".

87.100.   While the DJM Group has repeatedly requested interest payments on the
DJM Note, Defendants PBI and Schumacher have failed to pay the represented
and contracted interest on the DJM Note.

88.101.   While the DJM Group has repeatedly requested payment on the DJM Note,
Defendants PBI and Schumacher have failed to pay on the DJM Note.

89.102.   Defendants PBI and Schumacher have breached their agreement to pay the
contracted principal and interest payments under the DJM Note.

## ARLENE LEIBSOHN

90.103.   Based on the Defendants' continued representations and assurances, Arlene
Leibsohn provided funds to Defendant Borrower.

91.104.   The note which was executed by Defendant Schumacher fbo Defendant
Borrower on May 2, 2023 to Mrs. Leibsohn, was for a principal amount of
$200,000, with a maturity or due date of August 2, 2023, with interest and fees
due, in addition to the principal (the "AL Note"), copy of which is attached hereto
as Exhibit "P").

92.105.   Mrs. Leibsohn provided payment to Defendant Borrower in accordance
with the AL Note.

93.106.   On September 18, 2023, at the request of Defendant Schumacher, and
based upon Defendants' repeated representations and assurances, Mrs. Leibsohn
executed a Note Extension Agreement, extending the maturity date stated on the
$200,000 AL Note 1 of August 2, 2023 to March 28, 2024, at 10% per month,
copy of which is attached hereto as Exhibit "Q".

94.107.    While Mrs. Leibsohn has repeatedly requested interest payments on the AL

Note, Defendants PBI and Schumacher have failed to pay the represented and

contracted interest on the AL Note.

95.108.    While Mrs. Leibsohn has repeatedly requested payment on the AL Note,

Defendants PBI and Schumacher have failed to pay on the AL Note.

96.109.    Defendants PBI and Schumacher have breached their agreement to pay the

contracted principal and interest payments under the AL Note.

**Assurances/ Representations**

110.        As referenced above, Defendants regularly and consistently engaged in a

scheme to defraud David Miller, and other potential and actual lenders, to continue

to provide financing.

111.        Defendant Garden State Entities, acting through its agents Brodt and Ernest

Pellegrino, regularly assured David Miller that his investments were solid, and that

Miller and Miller's finances were protected, including with additional funding

from other investors and lenders, and that it was actively engaging in funding.

97.

98.112.  Said representations were made to assure David Miller to continue funding

PBI.

113.        Said representations were made to assure David Miller to continue funding

PBI, so PBI could remain in business, so that the Garden State Entities could

continue providing financial advisory services for which they were paid

commissions and fees.

| Formatted: Font: Times New Roman |
| Formatted: Font: 13 pt |
| Formatted: Font: Times New Roman |
| Formatted: Font: Times New Roman |
| Formatted: Font: Times New Roman |
| Formatted: Font: Times New Roman |

~~99.~~

~~100.~~**114.** PBI is a publicly traded company.

~~101.~~**115.** Federal securities laws require publicly reporting companies to disclose information on an ongoing basis.

~~102.~~**116.** Domestic issuers must submit quarterly reports on Form 10-Q, and annual reports on Form 10-K.

**Formatted:** No underline

~~103.~~**117.** Pursuant to Section 13(a)(1) of the Exchange Act, companies must file with the SEC, within 45 days after each of the first three fiscal quarters of each year, a Form 10-Q quarterly report that includes unaudited financial statements that have been reviewed by accountants and other materially important market related information such as changes in risk factors, material risk or proceedings, and defaults, thus providing a continuing view of the company's financial position during the year.

~~104.~~**118.** Pursuant to Section 13(a)(2) of the Exchange Act, companies must file with the SEC, within 90 days of the end of each fiscal year annual reports, a Form 10-K, which includes comprehensive audited financial statements, description of the company's business and corporate policies, and any information that may be relevant to it and its market.

~~105.~~**119.** Upon information and belief, PBI currently lacks funds to pay its auditor, and thus has difficulty in filing its required reportings.

~~106.~~**120.** PBI's last filing was the Form 10-Q for the first quarter of 2024, ending March 31, 2024.

107.121.  The note defaults, or extensions, were not reported in that filing.

108.122.  BPI has not filed the Form 10-Q for 2024's second and third quarters, and has not filed any Notification of Late Filing (Form NT 10-Q).

109.123.  Executive officers and principal financial officers must make individual certifications on each annual and quarterly report.

110.124.  Defendant Schumacher so attested in the reportings, which did not contain any disclosure regarding the note breaches.

125.       PBI is required to so file, both unaudited and audited statements, and has not done so.

126.       Defendant Schumacher was regularly engaging the Garden State Entities to further assure David Miller.

> Formatted: Font: Times New Roman

111.

112.127.  The vast majority of those assurances were telephonic.

128.       Defendant's Garden State Entities agent stated that he was wary of placing any representations in writing, text or email or otherwise, as he was supervised in the securities industry.

113.129.  Nevertheless, and purely by way of example are a few (redacted) emails:

   a.  From: Ric Schumacher
       To: David M
       Cc: Ric Schumacher
       Sent: Thursday, December 17, 2020 at 02:08:05 PM EST
       Subject: Terms of the $985K loan

       60-day loan
       First position on all PBIO assets
       Includes 26 issued patents
       Includes approximately a dozen pending patents

Includes over $500K in inventory (well over $1M in market value)
3-year warrant for $100,000 shares of PBIO @ $3.50 strike price

The funds will come into PBIO. We will use the funds to pay down a loan I have with my largest investor (multi-millionaire who has funded me over $5M in 2020 alone). He will then invest the funds into Availa, the Company I am merging with. He is very wealthy, just illiquid for the next few weeks. He will be paying back the loan.

**We can hop on the phone with Terry from Garden State Securities and he can add mor color.**

Really need to close tomorrow, Friday the 18th.

> **Formatted:** Don't adjust space between Asian text and numbers

> **Formatted:** Indent: Left: 1", First line: 0", Don't adjust space between Asian text and numbers

b.  **From:** Ric Schumacher
**To:** David M
**Cc:** Ric Schumacher
**Sent:** Thursday, December 17, 2020 at 11:29:12 PM EST
**Subject:** Terms for $850K Loan

> **Formatted:** Indent: Left: 0.5", First line: 0.5"

David…great news about your friend Rachel's willingness to consider the short-term $850K loan. Please confirm **for Terry and me** …that the terms below are the terms that she has verbally agreed to. Please also confirm that you have agreed to put your house up as collateral for the loan; in fact, my understanding is that she will only consider this loan if your house is included in the collateral. Confirming by simply replying to this email is fine. Thanks, Ric

Borrower: Pressure BioSciences, Inc. (PBI)
30-day loan
one 30-day extension @ Borrower's option
20% fee for first 30 days, earned immediately
15% fee for 30-day extension, earned immediately on Day-1 of extension
3-year Warrant for 100,000 shares PBIO with exercise price @$3.50
Collateral 1: first position on all assets of Pressure BioSciences
Collateral 2: 2.5 million shares of PBIO in reserve at Computershare
Collateral 3: David Miller's House

Ric

c.  **From:** Ric Schumacher

**To:** DAVID MILLER
**Sent:** Friday, April 16, 2021 at 12:29:26 PM EDT
**Subject:** RE: Vision Summary as of April 16, 2021

David…I told you the other day that I had to work on it. I don't know. You said in your earlier email that they needed money by the 27th. That is right around the corner. I just don't know as I am preparing for a talk this afternoon and the past week has been on the K. I will start pushing Terry and the new guy Brady over the weekend.

d. **From:** Terry Brodt xxx_@gsscapital.com
Date: Tue, May 11, 2021 at 12:56 PM
Subject: Conference Call
To: david@harllon.com <david@harllon.com>, bryan@bhpcap.com <bryan@bhpcap.com>, matt@bhpcap.com <matt@bhpcap.com>, Ernest Pellegrino <ep@gsscapital.com>

Today at 3:00 ET
1 712 770 5505
534549#

Best regards,

Terry L. Brodt
Managing Director / Investment Banking
GSS CAPITAL GROUP
328 Newman Springs Rd., 3rd Floor
Red Bank, NJ 07701
Phone: 732-212-1029
Fax: 732-212-1258
tbrodt@gsscapital.com
www.gsscapital.com

GSS Capital Group is the Investment Banking/Corporate Finance Dept. of Garden State Securities, Inc.

130. The latter email was also sent by the Garden State Entities to BHP Capital NY, Inc., through which the Garden State Entities had affected other deals and transactions.

**First Cause of Action**
**Breach of Contract**

114.**131.**  Plaintiffs repeat and reallege each of the above allegations, as if set forth

herein at length.

115.**132.**  Each promissory note was a valid contract.

116.**133.**  Plaintiffs funded each contract pursuant to the underlying note/ contract's

terms.

117.**134.**  Defendants have not paid the principal amount or interest or fees and costs

thereon.

118.**135.**  Defendants have breached their contracts with the Plaintiffs.

119.**136.**  The Plaintiffs have been injured by the Defendants' breach of the

contractual notes.

**<u>Second Cause of Action</u>**
**<u>Breach of Covenant of Fair Dealing</u>**

120.**137.**  Plaintiffs repeat and reallege each of the above allegations, as if set forth

herein at length.

121.**138.**  Defendants obtained salary and commissions and fees, resulting from the

funding of the notes by the Plaintiffs.

122.**139.**  Funds were also diverted away from the Plaintiffs, by arbitrarily paying

other parties, including the Defendants themselves as well as other investors.

123.**140.**  Defendants engaged in a scheme to deprive the Plaintiffs of the benefit of

the bargain of the contractual notes.

124.141.  New York recognizes that "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

125.142.  When one party to a contract deceives the other party and delays or prevents the exercise of that party's contractual rights, that party breaches the implied covenant of good faith and fair dealing.  *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (1st Dep't 2003).

126.143.  "[O]ne has an apparently unlimited right under a contract, that right may not be exercised solely for personal gain in such a way as to deprive the other party of the fruits of the contract".  *25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.,* 144 A.D.3d 665, 667 (2d Dep't 2016).

127.144.  Defendants breached the implied duty of good faith and fair dealing with the Plaintiffs.

128.145.  Plaintiffs have been damaged in an amount equal to their respective notes/ investments.

### Third Claim for Relief
### Common Law Fraud

129.146.  Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

130.147.  As set forth above, Defendants made material misrepresentations with knowledge or belief by Defendants of the statements' falsity, intentionally omitted material facts, all for the purpose that Plaintiffs would rely upon same.

131.148.  At no time did Defendants intend to comply with their representations.

132.149.  Plaintiffs' reasonable relied upon the acts and omissions of Defendants and

invested more than $2,000,000, none of which has been returned.

133.150.  Plaintiffs have been damaged in an amount equal to their respective notes/

investments.

**Fourth Claim for Relief**
**Common Law Equitable Fraud**

151.    Plaintiffs repeat and reallege each of the above allegations, as if set forth

herein at length.

152.    Defendants PBI and Schumacher made numerous false assurances and

representations to the Plaintiffs in order to obtain continued funding and then to

retain the funding, and not cover their contractual obligations.

153.    Defendants PBI and Schumacher made numerous false reportings in order

to hide the correct and actual financial status of PBI, for which Defendant

Schumacher as a principal was obligated to report truthfully.

154.    Defendant Garden State Entities made numerous false assurances and

representations to the Plaintiffs in order to have the Plaintiffs make additional

funding, and not to file any action against PBI and Schumacher, so as to keep their

commission running.

155.    Defendant Garden State Entities was aware, or should have been aware, of

the financial situation of PBI, and yet still advised the Plaintiffs as to both remain

and continue to fund, and still solicited additional investors to fund.

134.

135.156.  As set forth above, Defendants made material misrepresentations with

knowledge or belief by Defendants of the statements' falsity, intentionally omitted

material facts, all for the purpose that Plaintiffs would rely upon same.

136.157.  To the extent Defendants assert they did not knowingly make a false

representation, but made a false representation negligently or innocently, they

notwithstanding damaged Plaintiffs.

137.158.  Plaintiffs have been damaged in an amount equal to their respective notes/

investments.

**Fifth Claim for Relief**
**Negligent Misrepresentation**

138.159.  Plaintiffs repeat and reallege each of the above allegations, as if set forth

herein at length.

139.160.  Defendants made incorrect statements relating to the investments and

funding of the notes and PBI that they were directing, and were receiving

economic benefits from Plaintiffs' investments.

140.161.  Defendants made such statements intentionally, or if not intentionally,

negligently to Plaintiffs.

141.162.  Plaintiffs sustained damages based upon such negligent misrepresentations.

142.163.  Plaintiffs have been damaged in an amount equal to their respective notes/

investments.

**Sixth Claim for Relief**
**Racketeer Influenced Corrupt Organizations Act ("RICO")**

143.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

144.    Defendants conduct was an enterprise through a pattern of racketeering activity.

145.    Defendants PBI and Schumacher made numerous false assurances and representations to the Plaintiffs in order to obtain continued funding and then to retain the funding, and not cover their contractual obligations.

146.    Defendants PBI and Schumacher made numerous false reportings in order to hide the correct and actual financial status of PBI, for which Defendant Schumacher as a principal was obligated to report truthfully.

147.    The proximate cause on the damages on all notes after the first David Miller and Harllon notes included all false assurances and representations to the financial stability of PBI and its ability to return finances back to the Plaintiffs.

148.    There is a direct relationship between Plaintiffs' injury and the Defendants' conduct in violation of the Racketeer Influenced Corrupt Organizations act. 18 U.S.C. §§ 1961-68).

149.    Plaintiffs have been damaged in an amount equal to their respective notes/ investments.

**~~Seventh Claim for Relief~~**
**Violation of Section 10(B) and Rule 10B-5 of the Exchange Act,**
**15 USC 78A et seq.**

~~150.~~164.   Plaintiffs repeat and reallege each of the above allegations, as if set forth

herein at length.

~~151.~~165.   Defendants created, participated, and gained, to the detriment of Plaintiffs,

in a scheme to defraud Plaintiffs through the inducement of funding convertible

promissory notes.

~~152.~~166.   Defendants directly or indirectly, in connection with the purchase or sale of

securities and by the use of means or instrumentalities of interstate commerce, or

the mails, knowingly or recklessly has (i) employed one or more devices, schemes,

or artifices to defraud, (ii) made one or more untrue statements of a material fact

or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not

misleading, and/or (iii) engaged in one or more acts, practices, or courses of

business which operated or would operate as a fraud or deceit upon other persons.

~~153.~~167.   The scheme utilized by Defendants included the use of transactional

documents and oral representations to induce the Plaintiffs to believe that

Defendants had, or with the investments, would obtain favorable interest and fees,

and acquire PBI shares, a publicly traded company.

~~154.~~168.   Defendants Schumacher and PBI, working together with Garden State

Entities, offered notes and shares with full knowledge that they did not have

**Formatted:** Font: Times New Roman

**Formatted:** Font: Times New Roman

funds to repay those notes, would not possess such funds, and the funds were not going to be utilized for the stated purpose in the investment documents.

~~155.~~171. Rule 10b-5 broadly prohibit fraudulent and deceptive practices and untrue statements or omissions of material facts in connection with the purchase or sale of any security.

~~156.~~170. The scheme, or fraud, by Defendants, was in connection with the purchase or sale of securities based upon materially false statements and omitted material facts, with scienter, and Plaintiffs' reliance on the Defendants' acts and omissions induced and caused Plaintiffs to lose more than $2,000,000.

~~157.~~171. By reason of the foregoing Plaintiffs have been damaged in an amount to be determined at trial, including, but not limited, repayment of all notes, disgorgement of profits and commissions and fees, and all other permissible statutory relief.

**Seventh ~~Eighth~~ Claim for Rel~~ief~~**
**Declaratory Judgment against Defendant PBI**

~~158.~~172. Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

~~159.~~173. New York Civil Practice Law and Rules, Article 30, permits courts to "render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. NY CPLR § 3001.

160.174.  Plaintiffs have specified their rights, and Defendant PBI has breached each and every notes with the Plaintiffs, as denoted above. NY CPLR § 3017(b).

161.175.  Federal rules also permit a court to render a declaratory judgment, under 17 U.S.C. § 2201.  The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.  FRCP Rule 57.

162.176.  Plaintiffs request a judgment declaring the rights, duties, and obligations of the parties with respect to the contractual notes breached, and damages owed from those breaches.

163.177.  The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties, and will provide certainty to the parties with respect to their rights and obligations under the notes.

164.      By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment establishing the rights and obligations of the parties and determining the extent of Plaintiffs' entitlement to reimbursement for amounts paid in connection with the notes.

## SUMMARY

165.179.  Plaintiffs therefore request a declaration by this Court that they are entitled
to the just compensation for the note breaches, with damages in accordance with
he notes and extensions thereto requested by Defendant Schumacher, as
referenced in ¶39 and 40:

    a.  Harllon $250,000 note; and

    b.  Miller Trust note 1 $781,250, and Miller Trust note 2 $775,000; and

    c.  Vision note 1 $570,000, and Vision note 2 $275,000; and

    d.  DJM $315,000; and

    **e.**  Leibsohn $560,000.

**WHEREFORE**, Plaintiffs seeks judgment against Defendants, jointly and severally, as
follows:

1.  On the **First** Claim for Relief, Plaintiffs request the Court enter an order finding
Defendants liable for breach of contract, and award compensatory, consequential
and all other permissible statutory relief including attorneys' fees; and

2.  On the **Second** Claim for Relief, Plaintiffs request the Court enter an order finding
Defendants liable for breach of common law contractual fair dealing, and award
compensatory, consequential and all other permissible statutory relief including
attorneys' fees; and

3. On the **Third** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for common law fraud, and award compensatory, consequential damages and attorneys' fees; and

4. On the **Fourth** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for common law equitable fraud, and award compensatory, consequential damages and attorneys' fees; and

5. On the **Fifth** Claim For Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for negligent misrepresentation, and award compensatory, consequential damages and attorneys' fees; and

6. On the **Sixth** Claim For Relief, Plaintiffs request the Court enter an order finding Defendants violated the Racketeer Influenced Corrupt Organizations act, and award compensatory, consequential damages and attorneys' fees; and

7.6. On the Seventh Claim for Relief, Plaintiffs request the Court enter an order finding Defendants violated Section 10(b) And Rule 10b-5 of the 1934 Exchange Act, and award compensatory, consequential and all other permissible statutory relief including attorneys' fees; and

8.7. On the Eighth Seventh Claim for Relief, Plaintiffs request the Court enter a declaratory judgment against Defendant PBI for the requested amounts of breach, which breach is continuing, plus pre- and post-judgment interest, attorneys' fees, costs, other disbursements incurred in connection with this action, and all other permissible statutory relief; and

9.8.       For such other further relief as the Court may deem just, proper and in the

interest of justice.


March 19, 2025May 8, 2025
_____/RDV/

                                                    Richard DeVita, Esq.
                                                    SDNY Id # RD2190


**Gusrae Kaplan & Nusbaum PLLC**
120 Wall Street
New York, New York 10005

Richard Daniel DeVita, Esq.
1228 Garden Street
Hoboken, New Jersey 07030
201-803-2903
rdevita@gusraekaplan.com