# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MILLER as Trustee of the Miller Protective Trust UA 02/13/2019, DAVID MILLER FBO HARLLON HOLDINGS LLC, DAVID MILLER FBO VISION CAPITAL NY, INC., DILLON MILLER FBO the DJM GROUP, INC., and ARLENE LEIBSOHN, <br><br>         Plaintiff, <br><br>   -against- <br><br> PRESSURE BIOSCIENCES, INC., RICHARD SCHUMACHER, GARDEN STATE INVESTMENT AND ADVISORY SERVICES LLC, and GARDEN STATE SECURITIES, INC., <br><br>         Defendants. | **Case No.: 24:CV-8792-GHW** <br><br> **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT WITH JURY DEMAND** |

COME NOW Defendants Pressure Biosciences, Inc. ("PBI") and Richard Schumacher ("Mr. Schumacher") (collectively, "Defendants"), by and through their undersigned counsel, and hereby respond as follows (the "Answer") to the Amended Complaint[1] filed by Plaintiffs David Miller as Trustee of the Miller Protective Trust UA 02/13/2019, David Miller FBO Harllon Holdings LLC, David Miller FBO Vision Capital NY, Inc., Dillon Miller FBO the DJM GROUP, INC., and Arlene Leibsohn (collectively, "Plaintiffs"). Defendants reserve their right to amend or supplement their Answer. Defendants state that the headings and sub-headings in the Amended Complaint do not constitute well-pleaded allegations of fact and therefore require no response, but to the extent a response is required, Defendants deny the allegations in the headings and subheadings in the Amended Complaint. To the extent Defendants fail to respond to any specific allegation, such allegation(s) is/are deemed denied.

---

[1]     Defendants note that the "clean" version of the Amended Complaint filed by Plaintiffs (ECF No. 40-2) is not the same as the redlined version (ECF No. 40-1) (e.g., compare ¶¶ 61 – 64, 111 in ECF No. 40-2 with ¶¶ 61 – 64, 111 in ECF No. 40-1). Defendants' Answer recites the allegations in the redlined version because that version clearly identifies the changes from the original pleading. Defendants reserve all rights to amend their Answer should Plaintiffs take the position that the clean version is the operative pleading.

## SUMMARY

1.      Plaintiffs bring this action to remedy defaults of several promissory notes, which were procured and maintained by an ongoing fraud perpetrated by Defendants, in connection with the purported financing in and of PBI.

**RESPONSE**: Defendants admit that Plaintiffs assert claims for alleged breaches of promissory notes.  Defendants deny the remaining allegations in Paragraph 1.

2.      Defendants procured Plaintiffs' funds by fraud.

**RESPONSE**: Denied.

3.      The Defendants schemed to obtain funding, and additional funding, by making false representations and assurances regarding Defendant firm PBI, financing thereof and its ability to cover promissory notes, failed to disclose the firm's accurate financial situation, and failed to disclose that Defendant Schumacher was misappropriating and misdirecting company funds for his own personal use.

**RESPONSE**: Denied.

4.      All note documentation was prepared and delivered by Defendant Schumacher, who discussed same with the Plaintiffs.

**RESPONSE**: Denied.

5.      Based upon numerous and collective representations and assurances from the Defendants, the Plaintiffs agreed to provide funding to Defendant PBI and Schumacher.

**RESPONSE**: Denied.

6.      Based upon numerous representations and assurances from the Defendants, about the firm's finances and funding, the Plaintiffs agreed to numerous extensions on those notes, which extensions provided additional terms and conditions, including additional principal and interest.

**RESPONSE**: Denied.

7.    PBI and Schumacher have breached and defaulted on all executed notes, by their repeated failure to pay back principal and interest as reflected on those notes, even after repeated requests and assurances that they would so make payments.

**RESPONSE**: Paragraph 7 contains legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 7.

8.    Defendants have failed to make payments on the notes, and thus breached and defaulted on each.

**RESPONSE**: Paragraph 8 contains legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 8.

9.    Defendants engaged in a collective pattern of such joint representations and assurances to other investors and funders, to obtain original funding and additional funding.

**RESPONSE**: Denied.

10.    Defendants engaged in a collective pattern of such representations and assurances to other investors and funders, to obtain loan extensions.

**RESPONSE**: Denied.

11.    Defendants engaged in a collective pattern of such representations and assurances to other investors and funders, to obtain additional funding, to provide funds to other investors and funders, effectively engaging in a Ponzi scheme.

**RESPONSE**: Denied.

12.    Defendant Garden State Entities, through their agents, made representations and assurances to the Plaintiffs regarding the financial stability of PBI, and additional finances and funding, to continue to be able to obtain other investors to provide funds.

**RESPONSE**: Denied.

13.    During all relevant periods of time, Defendant Schumacher paid himself a salary not

indicative of a start-up struggling company not capable of paying its obligations, siphoning money off to himself and those around him, including, by way of example, just to himself: $309,161 in 2023, $309,185 in 2022, $308,962 in both 2021 and 2020, and approved similarly large compensation for other officers and principals of the firm.

**RESPONSE**: Defendants admit that Mr. Schumacher received a salary in the years 2020-2023.  Defendants deny the remaining allegations in Paragraph 13.

14.    Defendant Garden State Entities received commissions and fees on assisting Defendants PBI and Schumacher in their financing.

**RESPONSE**: Denied.

15.    Defendant Garden State Entities knew, or should have known, as investment professionals, that PBI was not generating sufficient revenue, and was in default of numerous promissory notes, yet continued to solicit funding for PBI, convincing Plaintiffs to continue to fund additional notes.

**RESPONSE**: Denied.

16.    Defendant Schumacher is an officer of PBI; its President and CEO.

**RESPONSE**: Admitted.

17.    Defendant Schumacher has a responsibility to have his corporation PBI report the default on any of the notes that are subject to this suit, and others.

**RESPONSE**: Paragraph 17 contains legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 17.

18.    Upon information and belief, Defendant Schumacher failed to report the default on any of the notes of other investors, thereby providing a fraud on the Plaintiffs.

**RESPONSE**: Denied.

19.    Upon information and belief, Defendant Schumacher failed to report this litigation,

thereby providing and continuing the fraud.

**RESPONSE**: Denied.

20.    Defendant Schumacher represented that PBI's corporate securities filings were accurate, when he was aware that said filings did NOT report the litigation or defaults.

**RESPONSE:**  Denied.

21.    Defendants violated numerous federal securities laws, including Rule 10B-5 of the Exchange Act.

**RESPONSE**: Paragraph 21 contains legal conclusions for which no response is required.  To the extent any response is required, denied.

22.    Due to their repeated and converted pattern of false assurances regarding the firm PBI and ability to repay the notes, and additional funding and investing, the Defendants engaged in a conduct of an enterprise through a pattern of racketeering activity.

**RESPONSE**: Denied. Further responding, Plaintiffs' claims for civil RICO are expressly precluded by the Private Securities Litigation Reform Act ("PSLRA"), and Plaintiffs have agreed to dismiss such claims.

## **PROCEDURAL HISTORY**

23.    This matter was initiated via the filing of a Summons and Notice in the Supreme Court of the State of New York, County of New York, Index No. 654729/ 2024 (ECF No. 4.1), which was served on Defendant on October 21, 2024 (ECF No. 4.2), originally titled *David Miller, Individually, and as Trustee for the Miller Family Protective Trust UA 02/13/2019, versus Pressure Biosciences, Inc.*

**RESPONSE:**  Admitted.

24.    The underlying issue between the parties in that matter was a series of two promissory notes issued by Defendant. Specifically, there are two notes in question for the Miller Trust, each for

$500,000, on which Defendant prepared and requested extensions. With extensions and forbearance agreements prepared by Schumacher fbo PBI, the amount of principal on those two notes is now $1,250,000, with interest and costs. The Defendants defaulted on those notes.

**RESPONSE:**  Defendants admit that there are two underlying notes, the terms of which speak for themselves.  Defendant deny the remaining allegations in Paragraph 24.

25.    Based on those notes' jurisdictional verbiage, on November 20, 2024 Defendant PBI filed a Notice of Removal to this Court (ECF No. 4), with Plaintiff David Miller a resident of and the Miller Protective Trust organized in the State of New York and Defendant organized in the Commonwealth of Massachusetts, and the amount in controversy exceeding $75,000.

**RESPONSE:** Paragraph 25 contains legal conclusions for which no response is required.  To the extent any response is required, denied.

26.    Pursuant to the notes in question, New York law applies.

**RESPONSE:**  Paragraph 26 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

27.    During the January 2, 2025 meet and confer, Defendant PBI consented to the filing of a complaint adding the referenced plaintiffs.

**RESPONSE:** Denied.

28.    The original complaint was filed on March 28, 2025 (ECF 21), and served on March 31, 2025 (ECF 24).  A Civil Management Plan and Scheduling Order was entered on April 18, 2025 (ECF 30).

**RESPONSE:** Defendants admit that Plaintiffs eventually filed a complaint and that a case management plan and scheduling order was entered, and those documents speak for themselves. Defendants deny the remaining allegations in Paragraph 28**.**

29.    Pursuant to Fed. R. Civ. P 15(a)(1), Plaintiffs amend their original complaint to

remove the prior RICO claim, add the Garden State Entities, and allegations thereon.

**RESPONSE:** Defendants admit that Plaintiffs have amended their complaint as identified in Paragraph 29.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction pursuant to Section 10(b) and 10(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b) & 17 C.F.R. §240.10b- 5] Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mail in connection with the transactions, acts, practices and course of business alleged herein.

**RESPONSE**: Paragraph 30 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

31.     This Court further has diversity jurisdiction in that none of the Plaintiffs reside in Massachusetts or New Jersey. Defendants' state of residence or organization, and the amount in controversy, in excess of $2,000,000, far exceeds the jurisdictional requirements.

**RESPONSE**: Paragraph 31 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

32.     Venue lies in this district based on the underlying promissory notes' jurisdictional language; the matter was removed to this District based on diversity and the matter exceeding $75,000.

**RESPONSE**: Paragraph 32 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

33.     Communications between the Plaintiffs and Defendants were primarily telephonic, as well as email and texting.

**RESPONSE**: Denied.

## THE PARTIES

34.    Plaintiff David Miller is a resident of the State of New York.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 34.  Defendants accordingly deny the allegations in Paragraph 34.

35.    Plaintiff Miller Trust was organized in the State of New York.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 35.  Defendants accordingly deny the allegations in Paragraph 35.

36.    Plaintiff Harllon Holdings LLC is a limited liability corporation organized in the State of Delaware.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 36.  Defendants accordingly deny the allegations in Paragraph 36.

37.    Plaintiff Vision Capital NY Inc. is a corporation organized in the State of New York.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 37.  Defendants accordingly deny the allegations in Paragraph 37.

38.    Plaintiff DJM Group Inc. is a corporation organized in the State of New York; Dillon Miller as agent of DJM Group Inc. is a resident of the State of New York.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 38.  Defendants accordingly deny the allegations in Paragraph 38.

39.    Plaintiff Mrs. Arlene Leibsohn is a resident of the State of Florida.

**RESPONSE**: Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 39.  Defendants accordingly deny the allegations in Paragraph 39.

40.    Defendants Pressure Biosciences, Inc. is a corporation organized in the Commonwealth of Massachusetts, is presently publicly listed on the Expert Market, a tier of the Over-the-Counter (OTC) markets with the ticker symbol (PBIO) and maintains its principal place of business at 480 Neponset Street, Unit 10B, Canton, Massachusetts 02021.

**RESPONSE**: Admitted.

41.    Defendants Richard Schumacher is a resident of the Commonwealth of Massachusetts. He is PBI's President, Chief Executive Officer and Director.

**RESPONSE**: Admitted.

42.    Defendant Garden State Investment Advisory Services LLC is a limited liability corporation organized in New Jersey, with an address of 328 Newman Springs Road, Red Bank, New Jersey 07701, and is an investment advisory firm registered with the US Securities and Exchange Commission ("SEC") since at least April 2014.

**RESPONSE:** Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 42.  Defendants accordingly deny the allegations in Paragraph 42.

43.    Garden State Securities Inc. is a corporation organized in New Jersey, also with an address of 328 Newman Springs Road, Red Bank, New Jersey 07701, and is a financial brokerage firm registered with the SEC since at least March 1981 and in all 50 states, with at least 24 reportable events including matters parallel to those raised here.

**RESPONSE:** Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 43.  Defendants accordingly deny the allegations in Paragraph 43.

44.    According to the website of Garden State Securities Inc., the firm's engages in financial advisory services through its Corporate Finance and Investment Banking Department, GSS Capital Group, which includes "structuring, negotiating, advising and assisting in place capital for investment banking/corporate finance clients".

**RESPONSE:** Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 44.  Defendants accordingly deny the allegations in Paragraph 44.

45.    Upon information and belief, it was Garden State Securities Inc.'s GSS Capital Group that was engaged with PBI.

**RESPONSE:** Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 45.  Defendants accordingly deny the allegations in Paragraph 45.

<u>**NOTES IN QUESTION**</u>

46.    David Miller invested with Defendants Schumacher and PBI for a period of time, with the firm paying back owed principal and interest, until the current obligations and breaches.

**RESPONSE**: Denied.

47.    On September 12, 2023, Defendant Schumacher provided David Miller an analysis summarizing the then approximate holdings of "David Miller and Related Parties", all in default and more fully discussed below; attached as Exhibit "A".

**RESPONSE**: Defendants deny that they owe any money to any Plaintiff.  Defendants admit that Plaintiffs attach Exhibit A, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 47.

48.    Based on the executed notes, Defendants PBI and Schumacher have defaulted on the Plaintiffs' notes on $1,950,000 funds provided, plus interest and fees and increased valuation on those notes, and interest and cost of litigation:

      a.  Harllon $650,000 notes, and

      b.  Miller Trust $700,000 noes, and

      c.  Vision $300,000 notes, and

      d.  DJM $100,000 note, and

      e.  Leibsohn $200,000 note.

**RESPONSE**: Paragraph 48 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

49.    Based on the executed notes, Defendants PBI and Schumacher have defaulted on the

Plaintiffs' notes, reflected at valuations on the provided spreadsheet and loan extension and forbearance documents, as of December 31, 2024, without penalties, costs and fees (marked as Exhibit "A"):

    a.   Harllon $250,000 note (one $400,000 Harllon note was fraudulently converted, based on Defendant Schumacher's assurances that the conversion was solely to obtain funding from other investors who wanted to see money into the firm prior to theirs);[2] and

    b.   Miller Trust note 1 $500,000 increased by extension $100,000 and interest of $181,250 to total of $781,250; and

    c.   Miller Trust note 2 $500,000 increased by extension $100,000, plus interest of $175,000 to a total of $775,000; and

    d.   Vision note 1 $300,000 decreased by $100,000 and then increased by extension to $380,000, plus $190,000 interest, to a total of $570,000; and

    e.   Vision note 2 $100,000 increased by extension to $190,000, plus $85,000 interest, to a total of $275,000; and

    f.   DJM $100,000 note increased by extension to $230,000, plus $85,000 interest, to a total of $315,000; and

    g.   Leibsohn $200,000 note increased to $400,000 by extension, plus $160,000 interest, to a total of $560,000.

**RESPONSE**: Paragraph 49 contains legal conclusions for which no response is required.  To

---

[2]    The federal securities laws declare that all contracts made or to be performed in violation of the federal securities laws are voidable at the option of the party that did not violate those laws. See, e.g., *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006) (citing 15 U.S.C. § 78cc(b); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387–88 (1970); *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206 n.4 (2d Cir. 1989)); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (citing 15 U.S.C. § 78cc(b)).

    **RESPONSE**: Footnote No. 1 contains legal conclusions for which no response is required. To the extent a response is required, denied.

the extent a response is required, denied.

50.     The forbearance documents are an acknowledgment by the Defendants of their default and breach on each note.

**RESPONSE**: Paragraph 50 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

## HARLLON HOLDINGS LLC

51.     Based on the representations and assurances of Defendant Schumacher, David Miller fbo Harllon Holdings LLC provided funds to Defendant Borrower evidenced by two notes: $500,000 on January 4, 2021 ("Harllon Note 1") and $250,000 on September 15, 2021 ("Harllon Note 2").

**RESPONSE**: Defendants admit the existence of the referenced notes, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 51.

52.     Harllon Note 1, which was prepared and executed by Defendant Schumacher fbo Defendant Borrower on January 4, 2021, was for a principal amount of $500,000, with a maturity or due date of July 6, 2021, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "B".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit B, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 52.

53.     Harllon Holdings provided payment to Defendant Borrower in accordance with the Harllon Note 1.

**RESPONSE**: Paragraph 53 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

54.     Defendants PBI and Schumacher were aware that Plaintiff David Miller personally procured the provided funds by obtaining a mortgage on his residence.

**RESPONSE**: Denied.

55.     Defendants PBI and Schumacher repaid $100,000 on Harllon Note 1 on August 10, 2021.

**RESPONSE**: Admitted.

56.     On September 15, 2021, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, and the repayment, David Miller executed a Promissory Note Extension fbo Harllon, extending the original maturity date on the remaining $400,000 Harllon Note 1 to September 30, 2021.

**RESPONSE**: Denied.

57.     Defendant Schumacher was assuring David Miller that he and PBI had funds to pay back the borrowed $500,000, and based on the repayment of the $100,000, the remaining $400,000, with interest.

**RESPONSE**: Denied.

58.     Defendant Schumacher was assuring David Miller that he and PBI were in negotiations for funding, from several companies interested in one aspect of PBI or another, often bolstered by conversations with agents of the Garden State Entities.

**RESPONSE**: Denied.

59.     Purely by way of example, during the time Defendant Schumacher was soliciting funds from Harllon, Defendant Garden State Entities' agents were assuring David Miller that they were in negotiations with Flexible Solutions International, Inc. ("FSI") which would be acquiring technology from PBI and thus any outstanding note would be paid off.

**RESPONSE**: Denied.

60.     Defendants' engaged in a plot and scheme to defraud David Miller, and others, in order to solicit funds.

**RESPONSE**: Denied.

61.    Defendants also represented that Clayton (Clay) Struve, investor/ lender in PBI, was making additional investments and funds, which would go directly and specifically to David Miller's outstanding notes.

**RESPONSE:** Denied.

62.    Defendant Garden State Entities represented that they had assisted Struve in financing with Know Labs, Inc. (KNE) which had generated considerable profit to Struve, who would place funds into PBI, which funding would cover David Miller's outstanding notes directly.

**RESPONSE:** Denied.

63.    Defendant Garden State Entities, acting through its agent Terry Brodt, represented that they could obtain funds from Struve.

**RESPONSE:** Denied.

64.    The representations were all a backdrop to a previous note coverage, where PBI had paid the principal on a $1,000,000 note to Harllon, which funds were borrowed by David Miller from a friend, Matt McCormack; Defendant Garden State Entities would regularly state that since he obtained financing to cover that note it would so do again to payback the Miller notes would as well.

**RESPONSE**: Denied.

65.    Defendants were aware of the specifics of that $1,000,000 note and repayment.

**RESPONSE**: Denied.

66.    Based on those representations, David Miller fbo Harllon agreed to discuss Harllon Note 2, which was prepared and executed by Defendant Schumacher fbo Defendant Borrower on September 15, 2021, for a principal amount of $250,000, with a maturity or due date of March 15, 2022, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "C".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit C, the terms of which speak for

themselves.  Defendants deny the remaining allegations in Paragraph 66.

67.    Harllon Holdings provided payment to Defendant Borrower in accordance with the Harllon Note 2.

**RESPONSE**: Paragraph 67 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

68.    On April 24, 2024, at the requests of Defendant Borrower, and based upon Defendant Schumacher's repeated representations and assurances, Harllon Holdings executed note extension agreements, acknowledging maturity date extensions on Note 2 to March 15, 2022, then to September 15, 2023, and then to March 15, 2024, and finally on April 24, 2024 through September 24, 2024, on an increased note value of $385,000, copy of which is attached hereto as Exhibit "D".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit D, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 68.

69.    That April 24, 2024 Note 2 extension expressed a $15,000 a month interest payment.

**RESPONSE**: The terms of the referenced note speak for themselves.  Defendants deny the remaining allegations in Paragraph 69.

70.    While Harllon Holdings has repeatedly requested interest payments on Harllon Note 1 and 2, and their extensions, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on the Harllon Notes, including for Harllon Note 2 of $15,000 a month from April 24, 2024.

**RESPONSE**: Denied.

71.    While Harllon Holdings has repeatedly requested payment on Harllon Note 1 and Note 2, Defendants PBI and Schumacher have failed to pay on the Harllon Notes.

**RESPONSE**: Denied.

72.    Defendants PBI and Schumacher have breached their agreements to pay the

contracted principal and interest payments under Harllon Note 1 and Harllon Note 2.

**RESPONSE**: Paragraph 72 contains legal conclusions for which no response is required. To the extent a response is required, denied.

73.     The claims for these notes, for David Miller and Harllon, occurred with direct false assurances and representations from Defendant Schumacher, prior to the false assurances and representations sales pitches from Defendant Garden State Entities.

**RESPONSE**: Denied.

## MILLER PROTECTIVE TRUST UA 02/13/19

74.     Based on the Defendants' continued representations and assurances, David Miller, as Trustee of the Miller Protective Trust UA 02/13/2019 (the "Miller Trust"), provided funds to Defendant Borrower evidenced by two $500,000 notes, executed on March 13, 2023 ("Trust Note 1") and March 24, 2023 ("Trust Note 2").

**RESPONSE**: Defendants admit the existence of the referenced documents, the terms of which speak for themselves. Defendants deny the remaining allegations in Paragraph 74.

75.     Trust Note 1, which was prepared and executed by Defendant Schumacher fbo Defendant Borrower on March 13, 2023, was for a principal amount of $500,000, with a maturity or due date of September 13, 2023, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "E".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit E, the terms of which speak for themselves. Defendants deny the remaining allegations in Paragraph 75.

76.     The Miller Trust provided the $350,000 payment to Defendant Borrower in accordance with Trust Note 1.

**RESPONSE**: Paragraph 76 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

77.    Trust Note 2, which was executed by Defendant Schumacher fbo Defendant Borrower on March 24, 2023, was for a principal amount of $500,000, with a maturity or due date of September 25, 2023, with interest and fees due in addition to the principal, copy of which is attached hereto as Exhibit "F".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit F, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 77.

78.    The Miller Trust provided the $350,000 payment to Defendant Borrower in accordance with Trust Note 2.

**RESPONSE**: Paragraph 78 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

79.    On September 18, 2023, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances the Miller Trust executed a Note Extension Agreement, extending the original maturity date stated on Trust Note 1 of September 13, 2023 to March 18, 2024, copy of which is attached hereto as Exhibit "G".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit G, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 79.

80.    Also on September 18, 2023, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, the Miller Trust executed a Note Extension Agreement, extending the original maturity date stated on Trust Note 2 of September 24, 2023 to March 24, 2024, copy of which is attached hereto as Exhibit "H".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit H, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 80.

81.    On March 27, 2024, again at the request of Defendants, the Miller Trust executed a new extension agreement, entitled the Miller Trust Forbearance Agreement, on both notes, copy of

which is attached hereto as Exhibit "I", which stated and acknowledged the then balance on Trust Note 1 of $550,000 and Trust Note 2 of $550,000, and extending each note, using a laddering scheduling if payments on the two notes were not made, as follows:

    a.  As of April 1, 2024, extending the time on each $550,000 note payment to the end of April 2024, with an additional $50,000 aggregate for the extension; and

    b.  As of May 1, 2024, extending the time on each $550,000 note payment to May 31, 2024, with an additional $50,000 aggregate for the additional extension; and

    c.  As of June 1, 2024, extending the time on each $550,000 payment to June 30, 2024, with an additional $50,000 aggregate for the additional extension.

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit I, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 81.

82.    The total owed to the Miller Trust, without additional interest and fees, as of June 30, 2024, was therefore $1,250,000, plus costs and fees:

    a.  $550,000 Note 1, and

    b.  $550,000 Note 2; and

    c.  $150,000 for the three extension of $50,000 each.

**RESPONSE**: Denied.

83.    While the Miller Trust has repeatedly requested interest payments on Trust Note 1 and Trust Note 2, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on Trust Note 1 and Trust Note 2.

**RESPONSE**: Denied.

84.    While Miller Trust has repeatedly requested payment on Trust Note 1 and Trust Note 2, Defendants PBI and Schumacher have failed to pay on the notes.

**RESPONSE**: Denied.

85.    Defendants PBI and Schumacher have breached their agreement to pay the contracted principal and interest payments under Trust Note 1 and Trust Note 2.

**RESPONSE**: Paragraph 85 contains legal conclusions for which no response is required. To the extent a response is required, denied.

### VISION CAPITAL NY

86.    Based on the Defendants' continued representations and assurances, Vision Capital NY provided funds to Defendant Borrower evidenced by two notes: $300,000 executed on January 12, 2023 ("VC Note 1") and $100,000 on May 23, 2023 ("VC Note 2").

**RESPONSE**: Denied.

87.    VC Note 1, which was executed by Defendant Schumacher fbo Defendant Borrower on January 12, 2023, was for a principal amount of $300,000, with an original maturity or due date of September 24, 2023, with interest and fees due, in addition to the principal, copy of which is attached hereto as Exhibit "J".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit J, the terms of which speak for themselves. Defendants deny the remaining allegations in Paragraph 87.

88.    Vision Capital provided the $300,000 payment to Defendant Borrower in accordance with VC Note 1.

**RESPONSE**: Paragraph 88 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

89.    Defendants PBI and Schumacher repaid Vision Capital $100,000 on VC Note 1 on June 30, 2023.

**RESPONSE**: Defendants admit that a payment was made on or about the specified date. Defendants deny the remaining allegations in Paragraph 89.

90.    VC Note 2, which was executed by Defendant Schumacher fbo Defendant Borrower

on May 23, 2023, was for a principal amount of $100,000, with a maturity or due date of September 23, 2023, with interest and fees due in addition to the principal, copy of which is attached hereto as Exhibit "K".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit K, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 90.

91.    Vision Capital provided the $100,000 payment to Defendant Borrower in accordance with VC Note 2.

**RESPONSE**: Paragraph 91 contains a legal conclusion for which no response is required.  To the extent a response is required, denied.

92.    On April 24, 2024, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, Vision Capital executed a Note Extension Agreement, extending the original maturity date stated on VC Note 1 of September 12, 2023 to March 18, 2024, and then to September 24, 2024, which also stated that the then owed principal sum including accrued interest on VC Note 1 was $380,000, copy of which is attached hereto as Exhibit "L".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit L, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 92.

93.    On April 24, 2024, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, Vision Capital executed a Note Extension Agreement, extending the original maturity date stated on VC Note 2 of September 23, 2023, to March 23, 2023, and then to September 24, 2024, which noted that the then owed principal sum including accrued interest on VC Note 2 was $190,000, copy of which is attached hereto as Exhibit "M".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit M, the terms of which speak for

themselves.  Defendants deny the remaining allegations in Paragraph 93.

94.    While Vision Capital has repeatedly requested payment on VC Note 1 and VC Note 2, Defendants PBI and Schumacher have failed to pay on those notes.

**RESPONSE**: Denied.

95.    Defendants PBI and Schumacher have breached their agreement to pay the contracted principal and interest payments under VC Note 1 and VC Note 2.

**RESPONSE**: Paragraph 95 contains legal conclusions for which no response is required.  To the extent a response is required, denied.

## DJM GROUP

96.    Based on the Defendants' continued representations and assurances, Dillon Miller as agent of the DJM, provided funds to Defendant Borrower.

**RESPONSE**: Denied.

97.    The note which was executed by Defendant Schumacher fbo Defendant Borrower on February 24, 2023 to the DJM Group, was for a principal amount of $100,000, with a maturity or due date of August 24, 2023, with interest and fees due, in addition to the principal (the "DJM Note", copy of which is attached hereto as Exhibit "N").

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit N, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 97.

98.    The DJM Group provided payment to Defendant Borrower in accordance with the DJM Note.

**RESPONSE**: Paragraph 98 contains a legal conclusion for which no response is required.  To the extent a response is required, denied.

99.    On September 18, 2023, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, the DJM Group executed a Note Extension

Agreement, extending the maturity date stated on the DJM Note of August 24, 2023 to March 24, 2024, with continued interest at 10% per month and other terms and fees, copy of which is attached hereto as Exhibit "O".

    **RESPONSE**: Defendants admit that Plaintiffs attach Exhibit O, the terms of which speak for themselves.  Defendants deny the remaining allegations in Paragraph 100.

100.    While the DJM Group has repeatedly requested interest payments on the DJM Note, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on the DJM Note.

    **RESPONSE**: Denied.

101.    While the DJM Group has repeatedly requested payment on the DJM Note, Defendants PBI and Schumacher have failed to pay on the DJM Note.

    **RESPONSE**: Denied.

102.    Defendants PBI and Schumacher have breached their agreement to pay the contracted principal and interest payments under the DJM Note.

    **RESPONSE**: Paragraph 102 contains legal conclusions for which no response is required. To the extent a response is required, denied.

## ARLENE LEIBSOHN

103.    Based on the Defendants' continued representations and assurances, Arlene Leibsohn provided funds to Defendant Borrower.

    **RESPONSE**: Denied.

104.    The note which was executed by Defendant Schumacher fbo Defendant Borrower on May 2, 2023 to Mrs. Leibsohn, was for a principal amount of $200,000, with a maturity or due date of August 2, 2023, with interest and fees due, in addition to the principal (the "AL Note"), copy of which is attached hereto as Exhibit "P").

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit P, the terms of which speak for themselves. Defendants deny the remaining allegations in Paragraph 104.

105.    Mrs. Leibsohn provided payment to Defendant Borrower in accordance with the AL Note.

**RESPONSE**: Paragraph 105 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

106.    On September 18, 2023, at the request of Defendant Schumacher, and based upon Defendants' repeated representations and assurances, Mrs. Leibsohn executed a Note Extension Agreement, extending the maturity date stated on the $200,000 AL Note 1 of August 2, 2023 to March 28, 2024, at 10% per month, copy of which is attached hereto as Exhibit "Q".

**RESPONSE**: Defendants admit that Plaintiffs attach Exhibit Q, the terms of which speak for themselves. Defendants deny the remaining allegations in Paragraph 106.

107.    While Mrs. Leibsohn has repeatedly requested interest payments on the AL Note, Defendants PBI and Schumacher have failed to pay the represented and contracted interest on the AL Note.

**RESPONSE**: Denied.

108.    While Mrs. Leibsohn has repeatedly requested payment on the AL Note, Defendants PBI and Schumacher have failed to pay on the AL Note.

**RESPONSE**: Denied.

109.    Defendants PBI and Schumacher have breached their agreement to pay the contracted principal and interest payments under the AL Note.

**RESPONSE**: Paragraph 109 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

## ASSURANCES/REPRESENTATIONS

110.    As referenced above, Defendants regularly and consistently engaged in a scheme to defraud David Miller, and other potential and actual lenders, to continue to provide financing.

**RESPONSE**: Denied.

111.    Defendant Garden State Entities, acting through its agents Brodt and Ernest Pellegrino, regularly assured David Miller that his investments were solid, and that Miller and Miller's finances were protected, including with additional funding from other investors and lenders, and that it was actively engaging in funding.

**RESPONSE**: Denied.

112.    Said representations were made to assure David Miller to continue funding PBI.

**RESPONSE**: Denied.

113.    Said representations were made to assure David Miller to continue funding PBI, so PBI could remain in business, so that the Garden State Entities could continue providing financial advisory services for which they were paid commissions and fees.

**RESPONSE**: Denied.

114.    PBI is a publicly traded company.

**RESPONSE**: Admitted.

115.    Federal securities laws require publicly reporting companies to disclose information on an ongoing basis.

**RESPONSE**: Paragraph 115 contains legal conclusions for which no response is required. To the extent a response is required, denied.

116.    Domestic issuers must submit quarterly reports on Form 10-Q, and annual reports on Form 10-K.

**RESPONSE**: Paragraph 116 contains legal conclusions for which no response is required.

To the extent a response is required, denied.

117.    Pursuant to Section 13(a)(1) of the Exchange Act, companies must file with the SEC, within 45 days after each of the first three fiscal quarters of each year, a Form 10-Q quarterly report that includes unaudited financial statements that have been reviewed by accountants and other materially important market related information such as changes in risk factors, material risk or proceedings, and defaults, thus providing a continuing view of the company's financial position during the year.

**RESPONSE**: Paragraph 117 contains legal conclusions for which no response is required. To the extent a response is required, denied.

118.    Pursuant to Section 13(a)(2) of the Exchange Act, companies must file with the SEC, within 90 days of the end of each fiscal year annual reports, a Form 10-K, which includes comprehensive audited financial statements, description of the company's business and corporate policies, and any information that may be relevant to it and its market.

**RESPONSE**: Paragraph 118 contains legal conclusions for which no response is required. To the extent a response is required, denied.

119.    Upon information and belief, PBI currently lacks funds to pay its auditor, and thus has difficulty in filing its required reportings.

**RESPONSE**: Denied.

120.    PBI's last filing was the Form 10-Q for the first quarter of 2024, ending March 31, 2024.

**RESPONSE**: The term "filing" is vague and non-specific.  Defendants accordingly deny the allegations in Paragraph 120.  Further, PBI has made filings (as it understands the term) since March 31, 2024.

121.    The note defaults, or extensions, were not reported in that filing.

**RESPONSE**: Denied.

122.    BPI has not filed the Form 10-Q for 2024's second and third quarters, and has not filed any Notification of Late Filing (Form NT 10-Q).

**RESPONSE**: Denied.

123.    Executive officers and principal financial officers must make individual certifications on each annual and quarterly report.

**RESPONSE**: Paragraph 123 contains legal conclusions for which no response is required. To the extent a response is required, denied.

124.    Defendant Schumacher so attested in the reportings, which did not contain any disclosure regarding the note breaches.

**RESPONSE**: Denied.

125.    PBI is required to so file, both unaudited and audited statements, and has not done so.

**RESPONSE**: Paragraph 125 contains legal conclusions for which no response is required. To the extent a response is required, denied.

126.    Defendant Schumacher was regularly engaging the Garden State Entities to further assure David Miller.

**RESPONSE:** Denied.

127.    The vast majority of those assurances were telephonic.

**RESPONSE**: Denied.

128.    Defendant's Garden State Entities agent stated that he was wary of placing any representations in writing, text or email or otherwise, as he was supervised in the securities industry.

**RESPONSE:**  Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 128.  Defendants accordingly deny the allegations in Paragraph 128.

129.    Nevertheless, and purely by way of example are a few (redacted) emails:

a. From: Ric Schumacher
   To: David M
   Cc: Ric Schumacher
   Sent: Thursday, December 17, 2020 at 02:08:05 PM EST
   Subject: Terms of the $985K loan


   60-day loan
   First position on all PBIO assets
   Includes 26 issued patents
   Includes approximately a dozen pending patents
   Includes over $500K in inventory (well over $1M in market value) 3-year warrant for $100,000 shares of PBIO @ $3.50 strike price
   The funds will come into PBIO. We will use the funds to pay down a loan I have with my largest investor (multi-millionaire who has funded me over $5M in 2020 alone). He will then invest the funds into Availa, the Company I am merging with. He is very wealthy, just illiquid for the next few weeks. He will be paying back the loan.

   **We can hop on the phone with Terry from Garden State Securities and he can add mor color.**

   Really need to close tomorrow, Friday the 18th.

b. From: Ric Schumacher

   To: David M
   Cc: Ric Schumacher
   Sent: Thursday, December 17, 2020 at 11:29:12 PM EST
   Subject: Terms for $850K Loan

   David…great news about your friend Rachel's willingness to consider the short-term $850K loan. Please confirm for Terry and me that the terms below are the terms that she has verbally agreed to. Please also confirm that you have agreed to put your house up as collateral for the loan; in fact, my understanding is that she will only consider this loan if your house is included in the collateral. Confirming by simply replying to this email is fine. Thanks, Ric

   Borrower: Pressure BioSciences, Inc. (PBI)
   30-day loan
   one 30-day extension @ Borrower's option
   20% fee for first 30 days, earned immediately
   15% fee for 30-day extension, earned immediately on Day-1 of extension
   3-year Warrant for 100,000 shares PBIO with exercise price @$3.50
   Collateral 1: first position on all assets of Pressure BioSciences
   Collateral 2: 2.5 million shares of PBIO in reserve at Computershare
   Collateral 3: David Miller's House

   Ric

    c.  From: Ric Schumacher

       To: DAVID MILLER
       Sent: Friday, April 16, 2021 at 12:29:26 PM EDT
       Subject: RE: Vision Summary as of April 16, 2021

       David…I told you the other day that I had to work on it. I don't know. You said in your earlier email that they needed money by the 27th. That is right around the corner. I just don't know as I am preparing for a talk this afternoon and the past week has been on the K.  I will start pushing Terry and the new guy Brady over the weekend.

    d. **From**: Terry Brodt xxx @gsscapital.com
       Date: Tue, May 11, 2021 at 12:56 PM
       Subject: Conference Call
       To:      david@harllon.com      <david@harllon.com>,      bryan@bhpcap.com <bryan@bhpcap.com>, matt@bhpcap.com <matt@bhpcap.com>, Ernest Pellegrino <ep@gsscapital.com>

       Today at 3:00 ET
       1 712 770 5505
       534549#

       Best regards,
       Terry L. Brodt
       Managing Director / Investment Banking
       GSS CAPITAL GROUP
       328 Newman Springs Rd., 3rd Floor
       Red Bank, NJ 07701
       Phone: 732-212-1029
       Fax: 732-212-1258
       tbrodt@gsscapital.com
       www.gsscapital.com

       GSS Capital Group is the Investment Banking/Corporate Finance Dept. of Garden State Securities, Inc.

**RESPONSE**: Denied.

130.    The latter email was also sent by the Garden State Entities to BHP Capital NY, Inc., through which the Garden State Entities had affected other deals and transactions.

**RESPONSE:**  Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 130.  Defendants accordingly deny the allegations in Paragraph 130.

## FIRST CAUSE OF ACTION
### Breach of Contract

131.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allage the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

132.    Each promissory note was a valid contract.

**RESPONSE**: Paragraph 132 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

133.    Plaintiffs funded each contract pursuant to the underlying note/ contract's terms.

**RESPONSE**: Paragraph 133 contains a legal conclusion for which no response is required. To the extent a response is required, denied.

134.    Defendants have not paid the principal amount or interest or fees and costs thereon.

**RESPONSE**: Denied.

135.    Defendants have breached their contracts with the Plaintiffs.

**RESPONSE**: Paragraph 135 contains legal conclusions for which no response is required. To the extent a response is required, denied.

136.    The Plaintiffs have been injured by the Defendants' breach of the contractual notes.

**RESPONSE**: Denied.

## SECOND CLAIM FOR RELIEF
### Breach of Covenant of Fair Dealing

137.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

138.    Defendants obtained salary and commissions and fees, resulting from the funding of the notes by the Plaintiffs.

**RESPONSE**: Denied.

139.    Funds were also diverted away from the Plaintiffs, by arbitrarily paying other parties, including the Defendants themselves as well as other investors.

**RESPONSE**: Denied.

140.    Defendants engaged in a scheme to deprive the Plaintiffs of the benefit of the bargain of the contractual notes.

**RESPONSE**: Denied

141.    New York recognizes that "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

**RESPONSE**: Paragraph 141 contains legal conclusions for which no response is required. To the extent a response is required, denied.

142.    When one party to a contract deceives the other party and delays or prevents the exercise of that party's contractual rights, that party breaches the implied covenant of good faith and fair dealing. *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (1st Dep't 2003).

**RESPONSE**: Paragraph 142 contains legal conclusions for which no response is required. To the extent a response is required, denied.

143.    "[O]ne has an apparently unlimited right under a contract, that right may not be exercised solely for personal gain in such a way as to deprive the other party of the fruits of the contract". *25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*, 144 A.D.3d 665, 667 (2d Dep't 2016).

**RESPONSE**: Paragraph 143 contains legal conclusions for which no response is required.

To the extent a response is required, denied.

144.    Defendants breached the implied duty of good faith and fair dealing with the Plaintiffs.

**RESPONSE**: Paragraph 144 contains legal conclusions for which no response is required. To the extent a response is required, denied.

145.    Plaintiffs have been damaged in an amount equal to their respective notes/ investments.

**RESPONSE**: Denied.

### THIRD CLAIM FOR RELIEF
### Common Law Fraud

146.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

147.    As set forth above, Defendants made material misrepresentations with knowledge or belief by Defendants of the statements' falsity, intentionally omitted material facts, all for the purpose that Plaintiffs would rely upon same.

**RESPONSE**: Denied.

148.    At no time did Defendants intend to comply with their representations.

**RESPONSE**: Denied.

149.    Plaintiffs' reasonable relied upon the acts and omissions of Defendants and invested more than $2,000,000, none of which has been returned.

**RESPONSE**: Denied.

150.    Plaintiffs have been damaged in an amount equal to their respective notes/ investments.

**RESPONSE**: Denied.

## FOURTH CLAIM FOR RELIEF
### Common Law Equitable Fraud

151.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

152.    Defendants PBI and Schumacher made numerous false assurances and representations to the Plaintiffs in order to obtain continued funding and then to retain the funding, and not cover their contractual obligations.

**RESPONSE:** Denied.

153.    Defendants PBI and Schumacher made numerous false reportings in order to hide the correct and actual financial status of PBI, for which Defendant Schumacher as a principal was obligated to report truthfully.

**RESPONSE:** Denied.

154.    Defendant Garden State Entities made numerous false assurances and representations to the Plaintiffs in order to have the Plaintiffs make additional funding, and not to file any action against PBI and Schumacher, so as to keep their commission running.

**RESPONSE:** Denied.

155.    Defendant Garden State Entities was aware, or should have been aware, of the financial situation of PBI, and yet still advised the Plaintiffs as to both remain and continue to fund, and still solicited additional investors to fund.

**RESPONSE**: Denied.

156.    As set forth above, Defendants made material misrepresentations with knowledge or

belief by Defendants of the statements' falsity, intentionally omitted material facts, all for the purpose that Plaintiffs would rely upon same.

**RESPONSE**: Denied.

157.    To the extent Defendants assert they did not knowingly make a false representation, but made a false representation negligently or innocently, they notwithstanding damaged Plaintiffs.

**RESPONSE**: Denied.

158.    Plaintiffs have been damaged in an amount equal to their respective notes/investments.

**RESPONSE**: Denied.

## FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation

159.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

160.    Defendants made incorrect statements relating to the investments and funding of the notes and PBI that they were directing, and were receiving economic benefits from Plaintiffs' investments.

**RESPONSE**: Denied.

161.    Defendants made such statements intentionally, or if not intentionally, negligently to Plaintiffs.

**RESPONSE**: Denied.

162.    Plaintiffs sustained damages based upon such negligent misrepresentations.

**RESPONSE**: Denied.

163.    Plaintiffs have been damaged in an amount equal to their respective notes/

investments.

**RESPONSE**: Denied

### SIXTH CLAIM FOR RELIEF
### Violation of Section 10(B) and Rule 10B-5 of the Exchange Act, 15 USC 78A et seq.

164.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

165.    Defendants created, participated, and gained, to the detriment of Plaintiffs, in a scheme to defraud Plaintiffs through the inducement of funding convertible promissory notes.

**RESPONSE**: Denied.

166.    Defendants directly or indirectly, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

**RESPONSE**: Denied.

167.    The scheme utilized by Defendants included the use of transactional documents and oral representations to induce the Plaintiffs to believe that Defendants had, or with the investments, would obtain favorable interest and fees, and acquire PBI shares, a publicly traded company.

**RESPONSE**: Denied.

168.    Defendants Schumacher and PBI, working together with Garden State Entities, offered notes and shares with full knowledge that they did not have funds to repay those notes, would

not possess such funds, and the funds were not going to be utilized for the stated purpose in the investment documents.

**RESPONSE**: Denied.

169.    Rule 10b-5 broadly prohibit fraudulent and deceptive practices and untrue statements or omissions of material facts in connection with the purchase or sale of any security.

**RESPONSE**: Paragraph 169 contains legal conclusions for which no response is required. To the extent a response is required, denied.

170.    The scheme, or fraud, by Defendants, was in connection with the purchase or sale of securities based upon materially false statements and omitted material facts, with scienter, and Plaintiffs' reliance on the Defendants' acts and omissions induced and caused Plaintiffs to lose more than $2,000,000.

**RESPONSE**: Paragraph 170 contains legal conclusions for which no response is required. To the extent a response is required, denied.

171.    By reason of the foregoing Plaintiffs have been damaged in an amount to be determined at trial, including, but not limited, repayment of all notes, disgorgement of profits and commissions and fees, and all other permissible statutory relief.

**RESPONSE**: Denied.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**
**Declaratory Judgment against Defendant PBI**

</div>

172.    Plaintiffs repeat and reallege each of the above allegations, as if set forth herein at length.

**RESPONSE**: Defendants admit that Plaintiffs purport to repeat and re-allege the referenced allegations.  Defendants repeat and incorporate their respective responses as if set forth fully herein.

173.    New York Civil Practice Law and Rules, Article 30, permits courts to "render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations

of the parties to a justiciable controversy whether or not further relief is or could be claimed. NY CPLR § 3001.

**RESPONSE**: Paragraph 173 contains legal conclusions for which no response is required. To the extent a response is required, denied.

174.    Plaintiffs have specified their rights, and Defendant PBI has breached each and every notes with the Plaintiffs, as denoted above. NY CPLR § 3017(b).

**RESPONSE**: Paragraph 174 contains legal conclusions for which no response is required. To the extent a response is required, denied.

175.    Federal rules also permit a court to render a declaratory judgment, under 17 U.S.C. § 2201. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. FRCP Rule 57.

**RESPONSE**: Paragraph 175 contains legal conclusions for which no response is required. To the extent a response is required, denied.

176.    Plaintiffs request a judgment declaring the rights, duties, and obligations of the parties with respect to the contractual notes breached, and damages owed from those breaches.

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations in Paragraph 176.

177.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties, and will provide certainty to the parties with respect to their rights and obligations under the notes.

**RESPONSE**: Paragraph 177 contains legal conclusions for which no response is required. To the extent a response is required, denied.

178.    By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment

establishing the rights and obligations of the parties and determining the extent of Plaintiffs'

entitlement to reimbursement for amounts paid in connection with the notes.

**RESPONSE**: Paragraph 178 contains legal conclusions for which no response is required.

To the extent a response is required, denied.

## SUMMARY

179.    Plaintiffs therefore request a declaration by this Court that they are entitled to the just

compensation for the note breaches, with damages in accordance with he notes and extensions thereto

requested by Defendant Schumacher, as referenced in ¶39 and 40:

     a.  Harllon $250,000 note; and

     b.  Miller Trust note 1 $781,250, and Miller Trust note 2 $775,000; and

     c.  Vision note 1 $570,000, and Vision note 2 $275,000; and

     d.  DJM $315,000; and

     e.  Leibsohn $560,000.

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that

Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted

immediately above.


**WHEREFORE**, Plaintiffs seeks judgment against Defendants, jointly and severally, as

follows:

1.  On the **First** Claim for Relief, Plaintiffs request the Court enter an order finding

    Defendants liable for breach of contract, and award compensatory, consequential and all

    other permissible statutory relief including attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that

Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted

immediately above.

2. On the **Second** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants liable for breach of common law contractual fair dealing, and award compensatory, consequential and all other permissible statutory relief including attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

3. On the **Third** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for common law fraud, and award compensatory, consequential damages and attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

4. On the **Fourth** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for common law equitable fraud, and award compensatory, consequential damages and attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

5. On the **Fifth** Claim For Relief, Plaintiffs request the Court enter an order finding Defendants liable to Plaintiffs for negligent misrepresentation, and award compensatory, consequential damages and attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that

Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

6.  On the **Sixth** Claim for Relief, Plaintiffs request the Court enter an order finding Defendants violated Section 10(b) And Rule 10b-5 of the 1934 Exchange Act, and award compensatory, consequential and all other permissible statutory relief including attorneys' fees; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

7.  On the **Seventh** Claim for Relief, Plaintiffs request the Court enter a declaratory judgment against Defendant PBI for the requested amounts of breach, which breach is continuing, plus pre- and post-judgment interest, attorneys' fees, costs, other disbursements incurred in connection with this action, and all other permissible statutory relief; and

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

8.  For such other further relief as the Court may deem just, proper and in the interest of justice.

**RESPONSE**: Defendants admit that Plaintiffs seek the specified relief.  Defendants deny that Plaintiffs are entitled to the specified relief.  Defendants deny any remaining allegations asserted immediately above.

## <u>JURY DEMAND</u>

Defendants request a trial by jury for any and all claims, defenses, or other matters in this Action that may lawfully be submitted to a jury.

## AFFIRMATIVE DEFENSES

1.      The subject agreements are unlawful and illegal because, *inter alia*, they are usurious.  The subject agreements may not be enforced as against either Defendant.

2.      Plaintiffs fail to state a claim for some or all of its claims, including, of note, Plaintiffs' claim for securities fraud.

3.      Some or all of Plaintiffs' claims are barred by applicable statute of limitations.

4.      Some or all of Plaintiffs' claims are barred by the doctrine of unclean hands, *in pari delicto*, and/or laches.

5.      Any non-performance by either of the Defendants is excused through impossibility.

6.      Any non-performance by either of the Defendants is excused by the material breaches of Plaintiffs of the subject notes.

7.      Plaintiffs understood and assumed the risk of nonpayment when they entered into the subject agreements; Plaintiffs fully understood and were aware that PBI only entered into such agreements because of its precarious financial condition and inability to obtain financing through traditional channels on commercially reasonable terms.

8.      The subject agreements are usurious on their face, and it therefore would be unconscionable to enforce them.

9.      Plaintiffs are responsible, at least in part, for any nonconformance, by taking steps, directly and indirectly, to interfere with PBI's financing sources and channels.

10.      Defendants entered into the subject agreements under duress, as a result of Plaintiffs' coercive acts, including, but not limited to, threats of physical violence against Mr. Schumacher. Therefore, the subject agreements are not enforceable.

## RESERVATION OF RIGHTS

Defendants expressly reserve their rights to amend or supplement their responses and affirmative defenses, as well as to assert counterclaims and/or third-party claims, as necessary, as their investigation and discovery progress.


Dated: May 28, 2025

<div style="margin-left: 40%;">

**LUCOSKY BROOKMAN LLP**

*/s/ Samuel L. Blatnick*
Samuel L. Blatnick
7300 W 100th St., Suite 700
Overland Park, Kansas 66210
(913) 392-8505
sblatnick@lucbro.com

Anne Melton
111 Broadway, Suite 807
New York, New York 10006
(732) 395-4409
amelton@lucbro.com

***ATTORNEYS FOR DEFENDANTS***
***PRESSURE BIOSCIENCES, INC. AND***
***RICHARD SCHUMACHER***

</div>


## CERTIFICATE OF SERVICE

I hereby certify that, on the 28th day of May, 2025, the above and foregoing was filed and served upon all counsel of record via the Court's electronic filing system.

<div style="margin-left: 55%;">

*/s/ Samuel L. Blatnick*
Samuel L. Blatnick

</div>